THE STATE OF IOWA v. DAVID ROSCUM, Appellant.

**Malicious mischief:** SEVERING AND CARRYING AWAY FRUIT TREES:
1 INSTRUCTION. On a prosecution for maliciously severing from the land and carrying away the fruit trees of another, the court's instruction as to the weight to be given the evidence which tended to connect defendant with the crime is upheld, when considered in connection with other instructions relating to the weight to be given circumstantial evidence and as to reasonable doubt.

**Proof of malice.** Proof that a defendant was actuated by specific
2 ill will toward the owner is not necessary in a prosecution for malicious mischief, but malice is sufficiently shown by proof of an intentional injury or destruction of the property without cause.

Sufficiency of evidence. On a review of the evidence it is held
3   insufficient to justify a conviction for maliciously severing
    and carrying away the fruit trees of another.

*Appeal from Des Moines District Court.*— Hon. W. S.
Withrow, Judge.

TUESDAY, OCTOBER 17, 1905.

DEFENDANT was charged with willfully, unlawfully,
maliciously, and mischievously pulling up, carrying away,
and severing from the land of one Anderson 41 fruit trees
then and there standing and growing, and on a trial to a jury
had in 1901 was convicted. This conviction was set aside
on appeal to this court. See 119 Iowa, 330. He was again
tried in 1904, and convicted, and now appeals from the
judgment.—*Reversed.*

*George S. Tracy* and *C. L. Poor,* for appellant.

*Chas. W. Mullan,* Attorney-General, and *Lawrence De
Graff,* Assistant Attorney-General, for the State.

McCLAIN, J.— The only evidence tending to connect
defendant with the crime was the finding, among the trees
recently planted in defendant's orchard, of four trees, which

1. MALICIOUS
MISCHIEF:
severing and
carrying away
fruit trees;
instructions.

by certain marks the prosecuting witness, Anderson, and other witnesses identified as among the trees taken from Anderson's premises in the commission of the crime charged.
Complaint is made of the instructions of the court as to the
weight to be given by the jury to this evidence, but we think
the instructions were not erroneous in this respect. The jury
were substantially told that if certain trees of the kind described in the indictment were severed and removed from
the land of Anderson wrongfully and without the consent of
the owner, and that some of them were within a short time
planted upon land occupied by the defendant, and if by the

admission of the defendant the jury found it to be a fact
that he placed such trees where they were found, such facts
would warrant the jury in finding the defendant guilty of
the crime charged, unless the possession of said trees had
been explained, or unless the explanation offered on behalf
of the defendant created in the minds of the jury a reason-
able doubt as to whether the trees had been wrongfully taken
from Anderson's land. There seems to be no just ground of
complaint of this statement of the law, accompanied with
other instructions as to the weight to be given to circumstan-
tial evidence and the necessity of finding beyond a reasonable
doubt that the trees found in defendant's orchard, and ad-
mitted to have been planted there by him, were the identical
trees that were taken from Anderson's land in connection
with the commission of the alleged crime.

There is also some complaint as to the instructions re-
lating to the malice necessary to constitute malicious injury
to the property of another; it being contended for appellant
that to justify a conviction there must be proof
2. PROOF OF    of express malice and ill will as against such
MALICE.
owner. But we think the court correctly in-
structed the jury that, while there must be proof that the
act was maliciously done, it was not necessary to prove that
the defendant was actuated by specific ill will toward the
owner, and that proof that he intentionally injured or de-
stroyed the property of such owner, without just cause or
excuse, was sufficient proof of the malice essential to consti-
tute the crime. *State v. Linde,* 54 Iowa, 139; *State v.
Williamson,* 68 Iowa, 351; *State v. Phipps,* 95 Iowa, 491.

But the most serious question in the case, as we view
it, is raised by the claim on behalf of appellant that the
evidence is not sufficient to support the verdict. It appears
from the testimony of Anderson and that of
3. SUFFICIENCY   Meyer, who was then working for him, that
OF EVIDENCE.
about 2,000 apple and peach trees, in alternate
rows, were set out on Anderson's farm about the 20th of

April, 1901, and that Meyer, either on his own suggestion and with Anderson's subsequent approval or on the original suggestion of Anderson, marked about 1,600 of these trees with a V-shaped notch, made with a knife on the scars left by the trimming of the branches after planting. Meyer's testimony as to the proportion of trees thus marked is very unsatisfactory; for on the last trial he testified that he marked about one-third of them, admitting at the same time that at the former trial he testified that he marked 1,600. Anderson does not show any definite knowledge on the subject, except that furnished by a cursory examination of the orchard after the trees had been marked. Meyer does testify to the marking of all the trees in the outside seven or eight rows around the orchard, and about half the trees in the middle part of the orchard. It further appears from the testimony of Anderson and Meyer that on May 2d it was discovered that thirty-six peach trees and five apple trees had been pulled or dug up and taken away. It is impossible to determine, from the indefinite testimony as to the places from which these trees were taken, whether they were in the rows, all of the trees of which had been marked, or in the middle part of the orchard, where only a portion of the trees had been marked; but it appears that they were not all taken from the same locality. On June 7th Anderson received through the mail an anonymous letter, postmarked at Burlington, advising him that he would find his trees set out on the Dave Roscum place, and that Roscum (this defendant) and his wife and his hired man stole them. Acting on this information, Anderson sent Meyer and one Krekel, who had also been in his employ and who lived in the neighborhood, with two officers from Burlington, in the nighttime to defendant's place, about five miles distant, to search for the stolen trees. It appears that Meyer and Krekel were the only two persons, beside Anderson himself, who knew about the marks on Anderson's trees, and that these two men conducted the search in defendant's orchard. One of them

had a dark lantern in his pocket, but the search for marked trees was made by feeling, and after six or seven trees had been examined in this way one was found with the proper marks, and was examined by means of the lantern. In the same way the second tree from this one in the row was found to be marked, and the marking identified by examination. This concluded the search made that night, and the next day the same parties, accompanied by the sheriff with a search warrant, went into defendant's orchard and found another tree between the two which had been discovered the night before which was marked, these three trees being apple trees, and in another part of the orchard one peach tree likewise marked, and these four trees, taken away by the officers and introduced on the two trials as exhibits and transmitted to this court for examination, furnished the entire basis in the evidence for connecting defendant with the commission of the crime.

We have examined the marks on these four trees, and, while they do correspond to some extent with the marks which Meyer says he made on the Anderson trees and with marks on other trees introduced in evidence taken from Anderson's orchard and sent up with the record, such correspondence is not to our minds very persuasive. The marks are such as might easily have been made on trees in defendant's orchard by any one desiring to throw suspicion on defendant. But it seems to us to be of very great significance that Krekel, after examining only six or seven trees, should by feeling alone, the night being so dark that he could not distinguish between the different kinds of trees, have found two of the four marked trees which were discovered after full search by daylight among the 146 trees in defendant's orchard; and it is also a curious circumstance that, if defendant took and planted out the forty-one trees which were missing from Anderson's orchard, he should have happened to get only four trees which were marked. It is established beyond controversy by the evidence that during

the previous fall fruit trees had been ordered by defendant and his wife for the purpose of planting this orchard, and that these trees and another lot bought out of a wagon had been delivered at defendant's place within about ten days prior to the 27th of April and heeled in ready to be planted; and the uncontradicted testimony of the defendant and his wife and a man who was working for him at the time is that all these trees, save the small lot of peach trees purchased out of a wagon, were planted before the 27th of April, and that this last lot of peach trees was planted on the 4th of May. If, then, the testimony for the defendant should be believed, the apple trees stolen from Anderson's orchard must have been planted in defendant's orchard among other apple trees already planted and in spaces reserved for them for that purpose, or in places from which trees already planted had been taken out.    As it seems to us, this is incredible, and, indeed, the whole theory of the prosecution seems incredible, in connection with the facts which are fully established; for, if defendant is guilty, he must have driven five miles with a team at night to steal forty-one trees, to be planted with other trees which he had purchased, when he might at an inconsiderable expense have fully supplied himself with trees from sources from which the other trees planted were procured.    There is absolutely no evidence of any malice or ill will on the part of defendant toward Anderson.    They had been on friendly terms while defendant had been living in Anderson's immediate neighborhood, and on the 12th of April preceding the loss of Anderson's trees defendant had visited Anderson's place and purchased seed potatoes from him, and in connection with the purchase had engaged in a long and friendly conversation.    This was before Anderson had planted out the trees in his orchard, so that the visit of defendant could not have been with any purpose to spy out the location of Anderson's orchard.    The testimony shows that this visit of defendant to Anderson's place was in the ordinary way of neighborhood relationship, and there

is not the slightest indication of any ulterior or sinister motive.

Defendant undertook to account for all the trees found planted in his orchard; but it must be admitted the evidence is conflicting, and that defendant does not satisfactorily prove, aside from his own testimony and that of his wife, that he procured as many trees from the different sources as were found planted. The discrepancy, however, is small, and explained, according to defendant's theory, by the delivery of a few more trees than the exact number ordered. On the other hand, however, the excess of trees in defendant's orchard over the number conclusively proven to have been delivered to him does not amount to half the number of trees shown to have been taken from Anderson's orchard, and, as already indicated, only four of the Anderson trees are in any way traced to the orchard of defendant.

We have reviewed the evidence with care, and have pointed out, in such detail as can only be justified by the peculiarities of this remarkable case, that the evidence does not justify the conclusion that defendant took any trees whatever from Anderson's orchard. The conviction is therefore set aside, and the case remanded for a new trial.— *Reversed.*